1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11    UNITED STATES OF AMERICA,                   Case No. 11CR3253-BTM

12                                  Plaintiff,    **ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT AND TO ISSUE A WRIT OF PROHIBITION**

13          v.

14    CATARINO MINERO-ROJAS,

15                                  Defendant.

16        Defendant Catarino Minero-Rojas ("Minero-Rojas") is charged with attempted entry

17    after deportation in violation of 8 U.S.C. § 1326; fraud and misuse of visas, permits and other

18    documents in violation of 18 U.S.C. § 1546(a); and aggravated identity theft in violation of

19    18 U.S.C. § 1028A. Minero-Rojas has filed a motion to dismiss the indictment and for the

20    issuance of a writ of prohibition ordering the United States to cease its pattern and practice

21    of delaying the presentment of defendants before a magistrate judge and subjecting pretrial

22    arrestees to substandard conditions of confinement. Doc. No. 24. For the reasons

23    discussed below, Minero-Rojas' motion is **DENIED** but the Court enters orders under its

24    supervisory powers to facilitate elimination of the continued delays in presenting defendants

25    before a magistrate judge.

26    //

27    //

28    //

**I**

This district is one of the busiest districts in terms of criminal defendants.   For example, in the 12-month period ending September 30, 2010, this district had criminal cases filed against 5,592 defendants.   Administrative Office of the United States Courts, <u>2010 Annual Report of the Director: Judicial Business of the United States Courts</u>, Table D at 207, http://www.uscourts.gov/uscourts/Statistics/JudicialBusiness/2010/JudicialBusinespdfversion.pdf.   The only other districts that had more criminal defendants in the same time period were the District of Arizona (7,856), the Southern District of Texas (9,375) and the Western District of Texas (9,905).   <u>Id.</u>

The overwhelming majority of criminal cases begin with the arrest of the defendant. Rule 5(a)(1)(A) of the Federal Rules of Criminal Procedure ("Rule 5") provides, in pertinent part, that "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge . . . ."   In speaking of the importance of Rule 5's requirement of presentment <u>without unnecessary delay</u>, the Supreme Court observed:

> It also counts heavily against the position of the United States that it would leave the Rule 5 presentment requirement without any teeth, for as the Government again is forced to admit, if there is no *McNabb-Mallory*, there is no apparent remedy for delay in presentment.  One might not care if the prompt presentment requirement were just some administrative nicety, but in fact the rule has always mattered in very practical ways and still does.  As we said, it stretches back to the common law, when it was "one of the most important" protections "against unlawful arrest."  Today presentment is the point at which the judge is required to take several key steps to foreclose Government overreaching: informing the defendant of the charges against him, his right to remain silent, his right to counsel, the availability of bail, and any right to a preliminary hearing; giving the defendant a chance to consult with counsel; and deciding between detention or release.

<u>Corley v. United States</u>, 556 U.S. 303, 129 S.Ct. 1558, 1570 (2009) (citations omitted).

Timely presentment of a defendant before a magistrate judge is also crucial to allow a defendant to consult with counsel so that steps can be taken to secure evidence that may

11CR3253-BTM

1  disappear or witnesses that may be unavailable.[1]  <u>See</u> Fed. R. Crim. P. 5(d)(2) ("The judge

2  must allow the defendant reasonable opportunity to consult with counsel.").

3       Moreover, the time for certain procedural due process protections, such as preliminary

4  hearings and detention hearings, run from the time of the initial appearance.  Fed. R. Crim.

5  P. 5.1(c) requires that "[t]he magistrate judge must hold the preliminary hearing within a

6  reasonable time, but no later than 14 days after the initial appearance if the defendant is in

7  custody and no later than 21 days if not in custody."  18 U.S.C. § 3142(f) provides that where

8  the attorney for the Government moves for an order of detention, the hearing shall be held

9  immediately upon the person's first appearance before the judicial officer.  The hearing may

10  be continued on motion of the defendant for up to five days and on motion of the

11  Government for up to three days.

12       Unnecessary delay in bringing an arrested defendant before a magistrate judge

13  frustrates the sound historical principles behind Rule 5.  It can result in a loss of evidence,

14  failure to timely make bail and the opportunity to communicate with counsel.  Furthermore,

15  a delay in presentment is *de facto* detention and the defendant is not to be detained without

16  a hearing under 18 U.S.C. § 3142(f) for more than three days from initial appearance unless

17  he/she asks for a further delay of two days.  Thus, by delaying the initial appearance, the

18  Government is able to obtain detention without a hearing longer than authorized by 18

19  U.S.C. § 3142(f).[2]  Moreover, holding the defendant in a detention facility for days before the

20  initial appearance often results in the defendant being held incommunicado.

21       In many districts, defendants are brought directly to the magistrate judges.  Although

22

23       [1] For example, a defendant may want to have his/her counsel obtain a surveillance

24  camera recording or items on his possession that might otherwise be unavailable if not obtained timely.  Also, counsel may want to seek to interview or preserve testimony of material witnesses who might be deported.  These are but a few examples of things that

25  counsel might find necessary to do after timely consulting with the defendant.

26       [2] With pre-initial appearance delays, the defendant may argue that the Government's right to a three day continuance of the detention hearing should run from the date the

27  defendant should have appeared before the magistrate judge rather than the delayed date of actual appearance.  However, this issue is not before the Court at this time.

28       Additionally, by delaying the initial appearance, the Government is delaying the start of the 14-day deadline for conducting a preliminary hearing under Fed. R. Crim. P. 5.1(c).

there is no specific written order, the practice in this district has been for the arresting agents to take arrested persons to the Metropolitan Correctional Center ("MCC").  The detainees are then screened for health issues and delivered to the U.S. Marshal to be brought to court. This process worked not only to ensure the safety and health of arrestees and those in contact with them, such as court personnel, but also to organize the defendants and provide them with access to counsel and Pretrial Services before their initial appearance so that a meaningful hearing could be held before the magistrate judge to determine their right to appointed counsel and conditions of release.  Additionally, given the large number of defendants arrested each day, the practice of bringing defendants directly to the magistrate judge would be disorganized and create serious security and administrative concerns. Under the practice in this district, defendants usually appeared before the magistrate judge the next court day after their arrest.  Sometimes, if they were arrested in the early morning, they were processed through the MCC and appeared on the magistrate judge's calendar that afternoon.

There is no requirement, however, that the MCC be the only point to which officers can bring arrested persons.  The MCC opened in 1974 and can only accommodate approximately 1,000 detainees.  Federal Bureau of Prisons, Weekly Population Report, http://www.bop.gov/locations/weekly_report.jsp (last visited Nov. 2, 2011).  At the same time, criminal prosecutions have recently skyrocketed in this district.  Between 2006 and 2010, the annual number of new criminal defendants in this district experienced a 76% increase from 3,180 in September 2006 to 5,592 in September 2010.  Compare Administrative Office of the United States Courts, 2006 Annual Report of the Director: Judicial Business of the United States Courts, Table D at 214, http://www.uscourts.gov/uscourts/Statistics/JudicialBusiness/2006/front/completejudicialb usiness.pdf, with Administrative Office of the United States Courts, 2010 Annual Report of the Director: Judicial Business of the United States Courts, Table D at 207, http://www.uscourts.gov/uscourts/Statistics/JudicialBusiness/2010/JudicialBusinespdfvers ion.pdf.  It is apparent that the MCC can no longer handle on a routine basis the influx of arrestees in this district.

1    The consequence of relying solely on the MCC has been a substantial failure to

2  comply with Rule 5(a)(1)(A) in the San Diego Division.[3]  Minero-Rojas asserts that arrestees

3  in this district are experiencing delays of five to eleven calendar days between the time of

4  arrest and initial appearance before a magistrate judge.  Doc. No. 24, App. A-D.  The

5  Government does not challenge the underlying data provided by Minero-Rojas.  However,

6  the Court's review of the data provided by Minero-Rojas reveals that excluding weekends

7  and court holidays, arrestees in this district are actually experiencing delays of two to six

8  court days, with the majority experiencing a delay of three court days.  See United States v.

9  Van Poyck, 77 F.3d 285, 289 (9th Cir. 1996) (weekend delays reasonable when due to

10  unavailability of magistrate judge).  Chart A below outlines the delays being experienced by

11  arrestees in this district, based on the data supplied by Minero-Rojas, excluding those in the

12  hospital post-arrest and pre-initial appearance, and excluding weekends and court holidays.

| CHART A | | | | | |
|---|---|---|---|---|---|
| DELAY (in court days) | 2 DAYS | 3 DAYS | 4 DAYS | 5 DAYS | 6 DAYS |
| DEFENDANTS | 15 | 172 | 72 | 30 | 4 |

16    Since Minero-Rojas' motion to dismiss the indictment was filed on August 29, 2011,

17  the delays in presentment have continued.[4]  Minero-Rojas claims that between August 31,

18  2011 and October 6, 2011, arrestees in this district have experienced delays of five to seven

19  calendar days.  Doc. 34, App. Y, Z, AA.  Once again, because the Government does not

20  challenge the underlying data provided by Minero-Rojas, the Court accepts it as accurate.

21  However, the Court's review of the data provided by Minero-Rojas reveals that excluding

22  weekends and court holidays, arrestees in this district are actually experiencing delays of two

---

[3] This motion to dismiss and this Order deal only with delays in presentment in the San Diego Division of the Court.  Whether or not there are delays in the El Centro Division is not before the Court in this case.

[4] On October 12, 2011, this Court issued an order requesting that both parties submit information regarding whether, since the filing of Minero-Rojas' motion to dismiss the indictment, there has continued to be delay between the time of arrest and the presentment of arrestees and if so, the range of the delays that have occurred.  Doc. 32.  The Government moves to strike Minero-Rojas' second submission.  Doc. 39.  That motion is **DENIED**.

11CR3253-BTM

to four court days.  See Van Poyck, 77 F.3d at 289.  Chart B below outlines the more recent delays being experienced by arrestees in this district, excluding those in the hospital post-arrest and pre-initial appearance, and excluding weekends and court holidays.

| CHART B | | | |
|---|---|---|---|
| DELAY (in court days) | 2 DAYS | 3 DAYS | 4 DAYS |
| DEFENDANTS | 31 | 84 | 28 |

Between August 29, 2011, when Minero-Rojas filed his motion to dismiss the indictment, and October 14, 2011, the Government reports that most of the defendants were arraigned within three court days of their arrest.  Doc. 37.  The Court's review of the data provided by the Government reveals that excluding defendants who were transferred from state custody or arrested pursuant to an out-of-district complaint, arrestees in this district are actually experiencing delays of one to six court days.  Chart C below outlines the more recent delays being experienced by arrestees in this district, according to the Government, excluding those in the hospital post-arrest and pre-initial appearance, and excluding weekends and court holidays.

| CHART C | | | | | | |
|---|---|---|---|---|---|---|
| DELAY (in court days) | 1 DAY | 2 DAYS | 3 DAYS | 4 DAYS | 5 DAYS | 6 DAYS |
| DEFENDANTS | 236 | 225 | 196 | 51 | 15 | 1 |

Minero-Rojas disputes the relevancy and accuracy of the Government's data, namely that the Government included cases where (1) the defendant was brought from state custody; (2) the defendant was not in custody at the initial appearance; (3) the defendant was arrested pursuant to an out-of-district complaint; and/or (4) the defendant had his/her initial appearance in El Centro, California or Yuma, Arizona.  Doc. 38 at 1:24-2:6.  Minero-Rojas also argues that there are errors in the Government's stated date of arraignment.  Doc. 38 at 2:7-8.  However, even if the Court were to take the Government's proffered data at face value, the Court still finds that there has been a pattern of failure to comply with Rule 5(a)(1)(A) because even an unnecessary delay of just one day is a violation of the rule.

The reality of the continued failure of the Government to comply with the timely

11CR3253-BTM

presentment provision of Rule 5 is underscored by the proceedings held before Magistrate Judge Cathy Ann Bencivengo just last Friday, October 28, 2011, of which the Court takes judicial notice.  See Bias v. Moynihan, 508 F.3d 1212, 1225 (9th Cir. 2007) (court may take judicial notice of proceedings in other courts if those proceedings have a direct relation to matters at issue).  A copy of the transcript of those proceedings will be filed in this case.  At 2:43p.m. on October 28, 2011, Judge Bencivengo reported on the record the names of the defendants who had been arrested earlier that week but not yet brought before her as the duty magistrate judge.  Judge Bencivengo found that as of Friday, October 28, 2011:

> And the Court notes that there are 35 individuals[5] being carried over from this week's log with dates of arrest starting on the 25th of October and proceeding through the 27th, and only two of them are unavailable due to detox situations.  And they will all be continued over to Monday's log.

Transcript of October 28, 2011 proceedings at 9:11-16.

An examination of some of the cases of persons arrested between October 25 and 27, 2011 and not brought before the Court by October 28, 2011 demonstrate the seriousness of the delay.  According to the transcript and docket, Antonio Baltazar Estrada Iglesias, Marvin Ochoa, and Sara Yesenia Solano were arrested on Tuesday, October 25, 2011 and were not going to be booked into the MCC until Saturday, October 29, 2011.  Thus, initial appearances could not take place until at least Monday, October 31, 2011.  They were brought before the magistrate judge on October 31, 2011 (11MJ4043, 11MJ4057) and on November 1, 2011 (11MJ4059).  Ramon Aguilar-Queen and Jose Gildardo Montes-Montes were arrested on October 25, 2011 and were not to be booked into the MCC until 9:30a.m. on Friday, October 28, 2011.  But they were not brought before the magistrate judge until October 31, 2011 (11MJ4022, 11MJ4008).  See Transcript of October 28, 2011 proceedings at 2:25-6:4.

At the conclusion of Judge Bencivengo's recitation of the fact of 36 defendants having been arrested between October 25 and 27, 2011 and not brought before the magistrate judge, a person, presumably from Federal Defenders of San Diego, Inc. ("Federal

---

[5] This Court actually counts 36 defendants rather than 35.

Defenders"), moved for their "immediate presentment." The magistrate judge denied the motion. Transcript of October 28, 2011 proceedings at 9:5-10.

The record, as amplified by last week's proceedings, demonstrate that because of unavailability of booking times at the MCC, 36 defendants were denied their opportunity to make bail, consult with counsel and receive the advice required by Rule 5. The delays extended the period in which they could be detained under 18 U.S.C. § 3142(f) without a hearing.

Furthermore, arrestees are being confined in conditions that are not proper. The evidence presently before the Court reveals that at the San Ysidro Port of Entry, where Minero-Rojas was detained prior to his presentment, (1) detainees are housed in a single cell with up to 20-25 people; (2) detainees sleep on the concrete floor and on metal benches; (3) detainees are provided with at most one blanket;[6] (4) detainees describe cold temperatures where one blanket does not suffice; (4) detainees are provided with just two meals per day; (5) detainees sleep and eat in the same cell with exposed toilets; and (6) detainees are not provided any hygiene items even after using the toilet or before eating.[7] Doc. 24 at 9:14-10:12; App. F, G, H.

The evidence presently before the Court also reveals that at the Imperial Beach Border Patrol station, (1) detainees sleep on the concrete floor and on metal benches; (2) detainees are sometimes provided with a mattress or blanket; (3) detainees are provided with just two meals per day; and (4) detainees are not provided any hygiene items.[8] Doc. 24, App. J. Doc. 31, App. X.

In a hearing before this Court in another case, it was revealed that at the Chula Vista Border Patrol station, (1) detainees are housed in a cell with about 30 people; (2) detainees are sometimes provided with a cot and blanket; (3) detainees sleep and eat in the same cell

---

[6] The Government states that some, but not all, detainees are also provided with a bedroll. Transcript of Sept. 12, 2011 hearing at 43:6-20.

[7] The Government states that soap, toothbrush and toothpaste are made available to detainees who ask for it. Transcript of Sept. 12, 2011 hearing at 43:21-44:2.

[8] The Government does not address the conditions of confinement at the Imperial Beach Border Patrol station.

11CR3253-BTM

1   with toilets; (4) detainees are provided three rather than two meals a day; (5) but detainees

2   are still not provided any hygiene items.[9]  United States v. Ultiminio Hernandez-Gutierrez,

3   11CR2629-BTM, Doc. 31, App. F.

4          However, the present record also indicates that at the Brown Field Border Patrol

5   station, (1) detainees are housed in a cell alone; and (2) detainees are provided three meals

6   a day.  Doc. 37, Exh. 2.  Miner-Rojas has offered no evidence of substandard conditions at

7   the Brown Field Border Patrol station.

8          Arrestees are being detained in substandard conditions as described above at

9   makeshift detention facilities at the Port of Entry and some Border Patrol stations because

10  of lack of space at the MCC.  The Government believes that it must bring all arrestees to the

11  MCC.  But that is not the case.  The practice of using the MCC for a conduit to bring the

12  arrestees before a magistrate judge works only if there can be compliance with Rule 5.  The

13  delay in bed space or "booking windows" is not an excuse that constitutes "necessary delay"

14  in bringing the arrestees before a magistrate judge.  The Government puts the cart before

15  the horse.  The defendants must appear before the magistrate judge and then are detained

16  and bed space required.  If the magistrate judge is available, the arrestee must be brought

17  to court and delivered to the U.S. Marshal for an appearance.   If the MCC cannot

18  accommodate them, alternatives must be obtained that will result in compliance with Rule

19  5 and constitutional conditions of confinement.  The Government can no longer seek to

20  utilize a system devised decades ago to accommodate only a fraction of the number of

21  persons now arrested.

22         Against this background, the Court must examine the facts of this case and Minero-

23  Rojas' motion to dismiss the indictment for a violation of Rule 5 and for relief under the All

24  Writs Act.

25  //

26  //

27  _____

28         [9] The Government in that case did not dispute these allegations.  United States v.
    Ultiminio Hernandez-Gutierrez, 11CR2629-BTM, Transcript of Sept. 13, 2011 hearing at
    35:6-36:15.

11CR3253-BTM

**II**

On Wednesday, July 6, 2011, at approximately 12:53 p.m., Minero-Rojas applied for admission into the United States from Mexico at the San Ysidro, California port of entry ("San Ysidro").  Minero-Rojas was arrested on the same day at approximately 5:14 p.m.  A criminal complaint was filed against Minero-Rojas on Thursday, July 7, 2011.  That same day, at approximately 4:50 p.m., Minero-Rojas was transported from San Ysidro to Scripps Memorial Hospital Chula Vista and then to the Alvarado Parkway Institute ("API").  Minero-Rojas arrived at API to be treated for heroin withdrawal at approximately 5:17 p.m.  On Wednesday, July 13, 2011, at approximately 3:13 p.m., Minero-Rojas was released from API and transported back to San Ysidro.  On Thursday, July 14, 2011, at approximately 11:30 a.m., Minero-Rojas was transported from San Ysidro to the MCC.  Minero-Rojas was brought before a magistrate judge to make his initial appearance on Friday, July 15, 2011, at approximately 2:10 p.m.  Transcript of Sept. 12, 2011 hearing at 32:19-33:10.

**A.  Dismissal of Indictment**

Minero-Rojas has filed a motion to dismiss the indictment for a violation of Rule 5 and for a violation of the Due Process Clause of the Fifth Amendment.

**1.  Rule 5**

Rule 5 provides that a person arrested must be taken before a magistrate judge "without unnecessary delay."  Fed. R. Crim. P. 5(a)(1)(A).  In this case, Minero-Rojas was arrested on July 6, 2011, but was not brought before a magistrate judge until July 15, 2011.  However, during this nine-day delay in presentment before a magistrate judge, Minero-Rojas spent six nights at API receiving medical treatment for heroin withdrawal.  The Ninth Circuit has held that "[a] delay caused by medical necessity does not violate Rule 5(a)."  United States v. George, 987 F.2d 1428, 1431 (9th Cir. 1993).

To the extent that Minero-Rojas argues that the two nights he spent at the San Ysidro port of entry and the one night he spent at the MCC constitutes a Rule 5 violation, the Government argues that but for Minero-Rojas' medical emergency, he would have been

10

11CR3253-BTM

1   arrested on July 6, 2011, admitted to the MCC on July 7, 2011, and "arraigned shortly

2   thereafter."[10]   Transcript of Sept. 12, 2011 hearing at 49:3-11.  Minero-Rojas was arrested

3   at approximately 5:14 p.m. on July 6, 2011, and spent that night in San Ysidro as he

4   received a booking window at the MCC for the next day.  The Court does not find that a Rule

5   5 violation occurred here because even if Minero-Rojas had been admitted to the MCC on

6   the evening of July 6, 2011, it is likely that Minero-Rojas would still have been taken to API

7   on July 7, 2011 due to symptoms of heroin withdrawal.  Transcript of Sept. 12, 2011 hearing

8   at 27:18-29:21.  However, once Minero-Rojas was released from API on July 13, 2011, at

9   approximately 3:13 p.m., he spent another night in San Ysidro because he did not receive

10   a booking window at the MCC until the next day.[11]  Minero-Rojas arrived at the MCC on July

11   14, 2011, and made his initial appearance the next day.  The Court finds that a Rule 5

12   violation occurred here due to the one-day delay as Minero-Rojas should have been brought

13   to the MCC after he was released from API on July 13, 2011, or to the Court no later than

14   July 14, 2011.  While there was only a one day delay in violation of Rule 5, the delay was

15   part of the pervasive delays inherent in the Government not bringing a defendant to a

16   magistrate judge unless he/she is first lodged at the MCC.

17        As discussed above, due to the volume of cases in this district, as well as concerns

18   about contagious diseases, it has been the practice to process arrestees through the MCC

19   before being brought to court for their initial appearance.  However, the Government can no

20   longer continue justifying its practice of delaying the presentment of arrestees based on the

21   MCC's booking procedure.  The Government notes that the Ninth Circuit has held that

22   _____

23        [10] The Government also argues that because the arresting agent has 48 hours within
     which to get the complaint filed, that initial 48-hour period after arrest is reasonable for Rule
24   5 purposes.  Transcript of Sept. 12 hearing at 36:10-37:13.  But this is not the case.  There
     is a constitutional requirement that probable cause determinations be made within 48 hours
25   of arrest.  County of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991).  But this requirement
     is different from Rule 5, which is a statutory requirement that arrested persons be brought
26   before a magistrate judge "without unnecessary delay."  Fed. R. Crim. P. 5(a)(1)(A).  Rule
     5 does not have a 48 hour exclusion.  If a defendant is not brought before a magistrate judge
27   within the 48 hours after arrest, the magistrate judge must make an independent
     determination of probable cause.

28        [11] The Government has explained to the Court that until it is known when an arrestee
     is going to be discharged from a hospital, a booking window at the MCC cannot be
     requested.  Transcript of Sept. 12, 2011 hearing at 47:21-25.

11CR3253-BTM

1    "administrative delays due to the unavailability of government personnel and judges

2    necessary to completing the arraignment process are reasonable and necessary" and do not

3    violate Rule 5.  United States v. Garcia-Hernandez, 569 F.3d 1100, 1106 (9th Cir. 2009).  But

4    the situation in Minero-Rojas' case cannot be justified as an "administrative delay."  In

5    Garcia-Hernandez, the court held that the delay in presentment was reasonable because

6    on that *particular* day of the defendant's arrest, border patrol officers were dealing with an

7    *unusually* heavy caseload.  Id. (emphasis added).    But the delay in Minero-Rojas'

8    presentment was not caused by unusual circumstances that suddenly overwhelmed

9    government personnel one day.    Rather, Minero-Rojas is just one of many whose

10   presentments have been systematically delayed because the Government has been utilizing

11   the MCC as the only place where arrestees may be brought before presentment.  In addition,

12   whereas the defendant in Garcia-Hernandez was arraigned before a magistrate judge the

13   very next day after being arrested, Minero-Rojas was not arraigned until two days after he

14   was released from the hospital.  Id. at 1102.  Nor does the case of United States v. Gamez,

15   301 F.3d 1138 (9th Cir. 2002), assist the Government.  In Gamez, there was a delay from

16   7:30 a.m. on one day until the defendant's appearance in court at 2:00 p.m. the next day.  Id.

17   at 1143.  The Ninth Circuit held that the delay incurred due to the need for the investigating

18   agents to obtain a Spanish-speaking agent was not in violation of Rule 5.  Id.  There, it was

19   necessary to interview the defendant in order to determine what kind of offense would be

20   charged against him.  Id.

21        The delay here resulted from the utilization of a process that no longer is effective to

22   protect the Rule 5 rights of defendants.  The same objectives served by use of the MCC as

23   a receiving point can be adequately accomplished by use of other detention facilities.[12]

24   Indeed, the defendants have been kept in other facilities pending their appearance before

25   the magistrate judge.  There is no reason that the agencies cannot timely deliver the

---

27   [12] The Court was under the impression that part of the health screening at the MCC
     requires arrestees to be tested for tuberculosis.  Minero-Rojas notes, and the Government
28   does not dispute, that the tuberculosis skin test requires 48 to 72 hours to determine whether
     or not a person has been infected.  Doc. 31 at 3:17-25.  But the majority of arrestees are
     processed through the MCC and brought to court in less than 48 hours.  Thus, the results
     of the tests are not known when the defendants are in court.

11CR3253-BTM

defendants to the U.S. Marshal if there is no room at the MCC.  The U.S. Marshal can bring the defendants to court and then place them at the several facilities presently used to house detained defendants.  The Court notes that the U.S. Marshal presently uses the GEO, a facility just a few blocks from the MCC and the Courthouse, the CCA facility in Otay Mesa near the border, and a facility in California City.  Where the defendants are kept is left to the discretion of the U.S. Marshal.  To delay bringing a defendant before a magistrate judge in order to utilize only one facility, the MCC, which has insufficient space, constitutes "unnecessary delay."

Nevertheless, the appropriate remedy for a Rule 5 violation ordinarily is not a dismissal of the indictment, but the suppression of evidence obtained during the unreasonable delay.  United States v. Studley, 783 F.2d 934, 937 n.2 (9th Cir. 1986) (normal remedy for Rule 5 violation is suppression of evidence obtained during unreasonable delay); see also United States v. Savchenko, 201 F.R.D. 503, 506 (S.D. Cal. 2001) (remedy for Rule 5 violation is suppression of prejudicial statements provided by the accused during the subject period).  Here, there is no evidence or allegation that Minero-Rojas confessed or made any other prejudicial statement that resulted from the delay.  See Bayless v. United States, 381 F.2d 67, 70-71 (9th Cir. 1967) (assuming 4-month delay between arrest and presentation was Rule 5 violation, motion to dismiss indictment properly denied where no admissions or confession obtained during delay).

While dismissal of an indictment for unnecessary delay in presentment before a magistrate judge is ordinarily not the appropriate remedy, it may be imposed by a district court where the Rule 5 violation is extreme or effected to cause denial of the right to make bail.  For example, in United States v. Osunde, the district court dismissed an indictment with prejudice as a remedy for violation of Rule 5 and the Speedy Trial Act.  638 F. Supp. 171, 176-77 (N.D. Cal. 1986) ("Although never imposed in this circuit, the remedial sanction of dismissal has been contemplated for flagrant unnecessary delays in bringing an arrested person before a magistrate.  The 106-day delay which occurred in the matter at bar would appear to present the appropriate facts warranting dismissal." (citation omitted)).

In United States v. Jernigan, the Ninth Circuit criticized the actions of a DEA agent

11CR3253-BTM

who caused the defendant to be placed in the county jail rather than taken before a magistrate judge. 582 F.2d 1211, 1214 (9th Cir. 1978).  While not granting dismissal of the indictment, the Court of Appeals cautioned:

> Our reading of the record persuades us that agent Horn deliberately delayed arresting Jernigan until a time when, as he well knew, Jernigan would not be able to go before a magistrate, have bail reset, and be released.  We deplore this kind of behavior, and its repetition may lead us to invoke the drastic remedy, dismissal of the indictment, that Jernigan asks us to invoke.

Id.

Here, however, the Government did not delay presentment of the defendant for a period of time anywhere near that in Osunde.  The delay was due to lack of space at the MCC and not for any improper purpose such as seeking to obtain a confession, cause the loss of evidence or prevent the defendant from making bail.  Thus, this case is akin to the ordinary case of delay and would merit the remedy of suppression of any confession and not dismissal.  The Court has now made clear to the Government that lack of space at the MCC does not constitute necessary delay under Rule 5.  The Court expects the delay problem to improve either by actions taken by the Government or by issuance of writs of habeas corpus discussed below.  It cannot be said that as of this point in time, the Government has been acting in bad faith.  Therefore, dismissal of the indictment is wholly inappropriate.  However, the wholesale failure to comply with Rule 5(a)(1)(A) must not continue.

## 2. Due Process Clause

A district court may dismiss an indictment on the ground of outrageous Government conduct if the conduct amounts to a due process violation.  United States v. Chapman, 524 F.3d 1073, 1084 (9th Cir. 2008) (internal citation omitted).  The Government conduct in securing an indictment must be so "grossly shocking" to due process values and "violate the universal sense of justice" that the indictment must be dismissed.  United States v. Holler, 411 F.3d 1061, 1065-66 (9th Cir. 2005) (internal citations omitted).  If the conduct does not rise to the level of a due process violation, a district court may still dismiss an indictment under its supervisory powers.  Chapman, 524 F.3d at 1084 (internal citation omitted).

14

1    Minero-Rojas argues that the indictment should be dismissed because the extended

2    delays in initial appearances and the substandard conditions of confinement experienced

3    by himself and other pretrial arrestees in this district constitute outrageous Government

4    conduct.    Minero-Rojas describes how other pretrial arrestees have suffered due to

5    unnecessary delays in their initial appearances and the poor conditions in which they have

6    been detained at various Ports of Entry and Border Patrol stations.  Doc. 24, App. F, G, H,

7    J.  But Minero-Rojas only has standing to assert his own circumstances as violating his

8    rights.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (plaintiff must have

9    suffered a personal "injury in fact" to have standing).  Given that the majority of his delay in

10   presentment before the magistrate judge was due to medical necessity, and considering the

11   totality of the conditions of confinement for the entire nine day period, the Court finds that

12   the government conduct in securing Minero-Rojas' indictment does not rise to the level

13   required to establish outrageous government conduct.

14   Minero-Rojas also asserts that this Court should use its supervisory powers to dismiss

15   the indictment in order to remedy a violation of Rule 5 and the Due Process Clause, as well

16   as to deter the Government from continuing to delay initial appearances and maintaining the

17   current substandard conditions of confinement.  In United States v. Hasting, the Supreme

18   Court outlined the purposes of a federal court's inherent supervisory powers:

19
20           "[G]uided by considerations of justice," and in the exercise of supervisory
             powers, federal courts may, within limits, formulate procedural rules not
21           specifically required by the Constitution or the Congress.  The purposes
             underlying use of the supervisory powers are threefold: to implement a
22           remedy for violation of recognized rights; to preserve judicial integrity by
             ensuring that a conviction rests on appropriate considerations validly before
             the jury; and finally, as a remedy designed to deter illegal conduct.
23

24   461 U.S. 499, 505 (1983) (citations omitted).  However, because dismissing an indictment

25   encroaches on the prosecutor's charging authority, this sanction may be permitted only "in

26   cases of flagrant prosecutorial misconduct."  Chapman, 524 F.3d at 1085.  A district court

27   may dismiss an indictment under its supervisory powers only when the defendant suffers

28   "substantial prejudice," and where "no lesser remedial action is available."  Id. at 1087

     (internal citations omitted); United States v. Struckman, 611 F.3d 560, 575 (9th Cir. 2010)

11CR3253-BTM

1  (defendant must demonstrate prejudice in order for the court to dismiss an indictment under

2  its supervisory powers).

3         As discussed above, the Court does not find a violation of the Due Process Clause

4  in this case and finds a Rule 5 violation of only a one-day delay.  Moreover, Minero-Rojas

5  did not suffer any prejudice from the delay in his presentment.  Although the Court finds no

6  basis for dismissal of the indictment under its supervisory powers in this case, especially in

7  light of the fact that Minero-Rojas received medical treatment for almost one week, the Court

8  may use its supervisory powers to institute remedial measures other than dismissal to effect

9  compliance with Rule 5's timely appearance requirement.  See, e.g., United States v. W.R.

10  Grace, 526 F.3d 499 (9th Cir. 2008) (en banc).

11

12  **B.  Writ of Prohibition**

13         Minero-Rojas seeks a writ of prohibition ordering the United States to cease its

14  pattern and practice of delaying presentment and subjecting pretrial arrestees to

15  substandard conditions of confinement.  Minero-Rojas describes how other pretrial arrestees

16  have suffered due to unnecessary delays in their initial appearances and the poor conditions

17  in which they have been detained at various Ports of Entry and Border Patrol stations.  Doc.

18  24, App. F, G, H, J.  But Minero-Rojas does not have standing to raise the pre-arraignment

19  circumstances experienced by other arrestees.  See Lujan, 504 U.S. at 560.  As for Minero-

20  Rojas himself, although it is troubling that he had to sleep on the floor with only a blanket and

21  was without hygiene products and adequate food while he was held in San Ysidro for two

22  nights (Doc. No. 24, App. K.), the Court finds that for the same reasons it has denied the

23  motion to dismiss under its supervisory powers, this is not the appropriate case to issue a

24  writ of prohibition under the All Writs Act.  28 U.S.C. § 1651(a); see Malone v. Calderon, 165

25  F.3d 1234, 1237 (9th Cir. 1999) (All Writs Act does not operate to confer jurisdiction and may

26  only be invoked in aid of jurisdiction which already exists).  However, as discussed below,

27  the Court does have the power to issue writs of habeas corpus to produce defendants.

28         Nonetheless, the information provided by Minero-Rojas about the process of delayed

presentment and substandard conditions of confinement experienced by him and other

1   arrestees at various Ports of Entry and Border Patrol stations causes the Court great

2   concern.  Under the Due Process Clause of the Fifth Amendment, pretrial detainees may not

3   be punished prior to an adjudication of guilt in accordance with due process of law.  Bell v.

4   Wolfish, 441 U.S. 520, 535 (1979) (internal citations omitted).  A court must determine

5   whether particular restrictions and conditions accompanying pretrial detention are imposed

6   for the purpose of punishment or whether it is but an incident of some other legitimate

7   governmental purpose.  Id. at 536-37 (internal citation omitted).  If a particular restriction or

8   condition of pretrial detention is "reasonably related" to a legitimate governmental objective,

9   it does not, without more, amount to "punishment."  Id. at 539.  On the other hand, if a

10  restriction or condition is not reasonably related to a legitimate goal, and thus "arbitrary or

11  purposeless," a court may infer that the purpose of the governmental action is punishment.

12  Id.  A court "must be mindful that these inquiries spring from constitutional requirements and

13  that judicial answers to them must reflect that fact rather than a court's idea of how best to

14  operate a detention facility."  Id. (internal citations omitted).

15      The Court finds it difficult to see how there may be a "legitimate governmental

16  objective" in not providing pretrial detainees with beds, hygiene products, and adequate food.

17  See Alvarez-Machain v. United States, 107 F.3d 696, 701 (9th Cir. 1996) (pre-trial detainees

18  entitled to adequate food, clothing, shelter, sanitation); see also Thompson v. City of Los

19  Angeles, 885 F.2d 1439, 1448 (9th Cir. 1989) (arrestee's claim of not being provided with

20  bed or mattress in county jail stated due process claim for purposes of civil rights action);

21  see also Graves v. Arpaio, 623 F.3d 1043, 1050-51 (9th Cir. 2010) (district court did not

22  abuse its discretion in ordering that pretrial detainees be provided food that met or exceeded

23  the Department of Agriculture's *Dietary Guidelines for Americans*).

24      The alleged substandard conditions, however, are a by-product of the failure to bring

25  the defendants to court.  Because of the delays, the arresting agencies have had to use

26  makeshift detention facilities not equipped to handle the number of defendants for the length

27  of time experienced in this district.  A remedy for the delay problem should in turn eliminate

28  the need for the Court to involve itself in the post-arrest conditions of confinement.

11CR3253-BTM

1   For the reasons discussed above, Minero-Rojas' motion to dismiss the indictment and

2   to issue a writ of prohibition is **DENIED**.

3

4   **III**

5   The Court holds that the delay in presenting the arrested defendants before a

6   magistrate judge due to unavailability of space at just one particular facility, the MCC, is

7   unnecessary delay.  However, the Court finds that the Government has not acted in bad faith

8   or for any improper purpose to cause prejudice to the defendants.  Nevertheless, the

9   defendants have been denied their rights to prompt presentation before a magistrate judge,

10  consultation with counsel, the opportunity to make bail and the timeliness of a detention

11  hearing under 18 U.S.C. § 3142(f).  The defendants have been held essentially

12  incommunicado, that is, without access to counsel or persons who may assist them.

13  In <u>United States v. W.R. Grace</u>, the Ninth Circuit en banc noted that it is a "'well

14  established' principle that '[d]istrict courts have inherent power to control their dockets." 526

15  F.3d at 509 (citation omitted).  In <u>W.R. Grace</u>, the Ninth Circuit held that under its

16  supervisory powers, the district could require the Government to disclose its witness list in

17  advance of trial. <u>Id.</u> at 509-10.  The Ninth Circuit noted that federal courts are vested with

18  "'inherent powers enabling them to manage their cases and courtrooms effectively . . . ." <u>Id.</u>

19  at 509 (internal citations omitted).  In light of its inherent supervisory powers and under the

20  authority of the All Writs Act, 28 U.S.C. § 1651(a), the Court directs the following remedy to

21  alleviate the delays and their attendant conditions of confinement.

22  (1) By 10:00a.m. each court day, the Government shall deliver to the duty magistrate

23  judge and the duty Federal Defender a list of all persons arrested in the San Diego Division

24  of this district for federal prosecution who were arrested prior to that day and who have not

25  yet appeared in court and will not appear before the magistrate judge that day.   The

26  Government shall also provide the reasons for the delay and the location of the defendants.

27  (2) It has been the practice in this district that the attorneys from Federal Defenders

28  represent all the arrested defendants at their Rule 5 hearing before the magistrate judge.

Federal Defenders interviews and counsels the defendants, obtains information for

18

application for appointment of counsel and for bail.  Since there is delay in presenting defendants, these defendants who are not timely presented should have the same opportunity to consult with counsel and obtain bail.  Thus, there is no reason why Federal Defenders should not provisionally represent them just as they would if they were timely produced.

(3) If a defendant is being detained in violation of the timely presentment requirement of Rule 5, the Court has the inherent power to remedy that violation by issuing a writ of habeas corpus ad prosequendum directing that the detaining agency produce the defendant to the U.S. Marshal for the purpose of the Rule 5 hearing.  The writ may designate that the agency produce the defendant to the U.S. Marshal or such institution designated by the U.S. marshal to receive the defendant.

Pursuant to Local Rule CivLR 72.1(h)(5)[13] of this Court, magistrate judges have express authority to issue writs of habeas corpus ad prosequendum.

Therefore, the magistrate judge, *sua sponte*, or on application of the Federal Defender or such other attorney retained or appointed by the magistrate judge, shall promptly determine, after an opportunity for the defendant and the Government to be heard, whether such a writ of habeas corpus shall issue to promptly remedy the violation of Rule 5.  Any appeal from the grant or denial of the writ shall be promptly assigned to such district judge as designated by the Clerk of the Court.

(4) The Court notes that the defendants who are detained have a right to consult with counsel.  See Fed. R. Crim. P. 5(d)(2); 18 U.S.C. § 3142(i)(3).  Counsel will now know where the defendants are detained.  Since the parties have not addressed whether the detaining agencies have been allowing visits by counsel during the delay in presentment before a magistrate judge, the Court need not reach the issue of whether it should mandate the availability of the opportunity to consult with counsel under its supervisory powers.

The power to issue writs of habeas corpus to remedy Rule 5(a) violations exist.  This

---

[13] A magistrate judge is authorized to "[i]ssue subpoenas, writs of habeas corpus ad testificandum or habeas corpus ad prosequendum, or other orders necessary to obtain the presence of parties, witnesses or evidence needed for court proceedings." CivLR 72.1(h)(5).

11CR3253-BTM

Order merely reminds the parties of the proper procedure to remedy a Rule 5 violation other than suppression of evidence.  What is new under this Order is the exercise of supervisory power to require the Government to provide the list set forth in Paragraph 1 above.  The requirement of Paragraph 1 shall commence on or before 10:00a.m. on Tuesday, November 8, 2011.

The Supreme Court in Corley quoted Justice Frankfurter's point in McNabb v. United States, 318 U.S. 332, 347 (1943), that "[t]he history of liberty has largely been the history of observance of procedural safeguards." 129 S.Ct. at 1570 (internal quotation marks omitted). The historical and continued importance of timely appearance before the Court of arrested persons is a procedural safeguard that will and should be protected by the Government and the Court.  The argument that "there is no room at the inn (MCC)" may not be used as a basis for delay.  The Court has found that the Government has not proceeded in bad faith. The Court hopes that this problem will be remedied without the necessity of court intervention by writ hearings and the work of the Government, the defense counsel and the Court in handling the many criminal cases on our border will return to orderly compliance with procedural safeguards.

**IT IS SO ORDERED.**

DATED:  November 3, 2011

Honorable Barry Ted Moskowitz
United States District Judge

20

11CR3253-BTM